# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JEFF T. PAGEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 09-CV-1132 |
| TIN INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

# O R D E R  &  O P I N I O N

This case arises under the Family and Medical Leave Act of 1993 (FMLA),

29 U.S.C. §§ 2601-54. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

Pending before the Court is the Defendant's Motion for Summary Judgment (Doc.

50). For the following reasons, Defendant's Motion for Summary Judgment is

GRANTED.


## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The Defendant, TIN Inc., is a Delaware corporation engaged in the business

of manufacturing and distributing corrugated paperboard and packaging products

and doing business in Illinois. (Doc. 51 at 3). The Plaintiff, Jeff Pagel, is a former

employee of TIN who was fired from TIN on October 4, 2006. (Doc. 51 at 2, 22).

---

[1] These background facts reflect the Court's determination of the undisputed facts, unless otherwise noted. Facts that are omitted are immaterial; if an included fact is immaterial to the Court's determination, this will be noted.

Prior to his termination, Pagel had worked for TIN since May of 2000 as a sales account manager, which is the functional equivalent of a salesman. (Doc. 51 at 3; Doc. 52-3 at 5). Beginning January 1, 2006,[2] Pagel began reporting to Scott Kremer, sales manager of TIN's Crawfordsville, Indiana and St. Louis, Missouri facilities. (Doc. 51 at 4). At this time, Pagel's sales territory was Central Illinois and Western Indiana and his base salary plus commissions netted him an annual income of approximately $180,000.00. (Doc. 51 at 4; Doc. 54-16). Additional benefits which Pagel received included the exclusive use of a company car, a Blackberry mobile device and a laptop computer. (Doc. 54-1, Doc. 54-4, Doc. 52-3 at 14). At the time that Kremer assumed supervisory responsibility over Pagel, there is no evidence that Pagel had ever been disciplined by TIN or received any warnings regarding his performance. (Doc. 54 at 24).

The essential functions of an account manager at TIN include calling on customers and prospective customers, planning, performing and reporting sales activities and objectives, solving customer problems and creating packaging solutions, and initiating packaging design projects. (Doc. 51 at 3-4). Prior to 2006, account managers did not receive formal performance reviews and Pagel's success was measured primarily by his sales volume. (Doc. 55-1 at 24-25). In 2006, TIN instituted a policy that required supervisors such as Kremer to write formal performance reviews on all account managers. (Doc. 55-1 at 24-25). The evaluative criteria in the account managers' reviews included the following: the quantity and quality of their sales activities, the volume of product they sell, and the new

---

[2] Unless otherwise noted, all dates are for the 2006 calendar year.

customers they acquire on a year-to-year basis. (Doc. 51 at 3). To aid him in this task, Kremer required Pagel and the other account managers to e-mail him daily reports of their activities as well as a more detailed report every two weeks. (Doc. 51 at 4-5).

TIN's account managers are able to set their own schedules and Pagel was not required to submit any formal or documented request for time off. (Doc. 54 at 5). Notwithstanding this, TIN's employment policies recognize and provide for FMLA leave. (Doc. 51 at 4).

In July of 2006, Pagel began experiencing chest pains. (Doc. 54 at 15). In response, Pagel visited a cardiologist in Peoria, Illinois on July 10. (Doc. 54 at 15, Doc. 54-6 at 1). Feeling that this cardiologist didn't take his symptoms seriously enough, Pagel sought a second opinion from a cardiologist in Davenport, Iowa on July 21. (Doc. 54-6 at 1). This new cardiologist recommended that Pagel undergo a stress test and Pagel returned to Davenport on an outpatient basis on August 4 and August 7 for this test. (Doc. 54 at 15). A week later, Pagel received a call from the cardiologist informing him that the test results revealed a partial blockage in his heart and an angioplasty and stenting would be required on August 29-30. (Doc. 54-18 at 3). Sometime subsequent to this telephone conversation, but prior to August 29, Pagel mentioned to Kremer that he would not be working on August 29-30 due to a medical procedure. (Doc. 54-6 at 2; Doc. 54-30). However, the parties dispute what was said regarding the August 29-30 procedure and also when in August it was said. (Doc. 54 at 16).

On August 24, 2006, while Pagel was visiting the Crawfordsville plant, Kremer called Pagel into a meeting with himself and the plant manager, Rick Eaks. (Doc. 54 at 5). At this time, Kremer handed Pagel a memo that was drafted by Kremer and addressed to Pagel, with a subject line entitled "Written Notice – Poor Performance." (Doc. 52-3 at 29-30; Doc. 52-3 at 78-79). Among other things, the memo explained that Pagel's sales volume had dropped in 2004, 2005, and 2006, that he had failed to identify and acquire any new customers in 2005 and 2006, and that he was failing to meet SEP (Sales Excellence Process) requirements, a component of which includes the aforementioned daily and bi-weekly reports. (Doc. 52-3 at 78-79). The memo also set forth new account goals for 2006, requiring that Pagel increase his tonnage and sales volume. (Doc. 52-3 at 78-79).

Pagel claims that he immediately noticed a number of mistakes in the performance data contained in this memo and he directed Kremer's attention to them. (Doc. 54-7). Kremer does not recall Pagel contesting the accuracy of the date contained in the memo. (Doc. 52-4 at 11). Kremer also testifies that he believed, and continues to believe, that the information in the performance memo was accurate. (Doc. 52-4 at 19).

The following week, on August 29, Pagel was admitted into inpatient care for an angioplasty and stenting. (Doc. 54 at 16). In the hours leading up to his surgery on the afternoon of August 29, Pagel placed telephone calls to a number of his existing clients, as well as to Kremer. (Doc. 54-13 at 1; Doc. 54-18 at 5-7). Furthermore, while recovering in the hospital post-surgery, Pagel continued to phone existing clients. (Doc. 52-3 at 44). Pagel was discharged on August 30, 2006

and returned home to continue his recovery.  (Doc. 52-3 at 44-45, Doc. 52-3 at 81).

Shortly thereafter, Pagel returned to work and became ill.  (Doc. 52-3 at 44-46).

Consequently, he was readmitted to the hospital on September 6 and discharged on

September 8.  (Doc. 54 at 16).  The following week, Pagel returned to work.  (Doc.

52-3 at 47).

On September 18, Pagel made an outpatient visit to the hospital to get a

radiological scan of a suspected mass in his lung, which turned out benign.  (Doc. 51

at 9).  That same day, Kremer phoned Pagel to inform him that he would be in

Pagel's sales territory the next day and told him that he would like to accompany

Pagel on his sales calls at that time.  (Doc. 52-3 at 49).  The following day, Pagel

took Kremer on three sales calls.  (Doc. 54 at 10).  The first sales call was to a

factory that had closed.  (Doc. 54 at 10).  At the second call, they met with a

receptionist who requested a quote on a very small number of boxes.  (Doc. 54 at

10).  At the third and final call, Pagel spent more than two hours promoting TIN's

products to a business that Kremer considered a bad fit because the business

required products that TIN did not offer.  (Doc. 54 at 10).  Pagel admits that his

ride-along with Kremer was not his best salesmanship, and that the experience

could have left Kremer with a bad impression of Pagel's sales abilities.  (Doc. 52-3 at

54).

On October 4, Kremer presented Pagel with a memorandum dated October 2,

2006 (the "Termination Letter") terminating Pagel's employment for poor job

performance.  (Doc. 52-3 at 80).  In addition to detailing deficiencies with Pagel's

sales calls, the memo also stated that Pagel had failed to improve his performance

in any of the critical areas outlined in his August performance warning, and instead, that Pagel's performance had declined even further. (Doc. 52-3 at 80).

On October 10, 2008, Pagel filed suit against TIN in the Circuit Court of Peoria County, Illinois alleging that he was terminated in violation of the FMLA, asserting both an interference and a retaliation claim. TIN timely removed the case to this Court on April 10, 2009, pursuant to 28 U.S.C. § 1441. (Doc. 1).

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores,* 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.,* 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the

nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison,* 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson,* 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

The FMLA entitles eligible employees to as many as twelve work weeks of leave during any twelve-month period when the employee has a "serious health condition" that makes the employee unable to perform the functions of his job. 29 U.S.C. § 2612(a)(1) (D); 29 C.F.R. § 825.112(a). A "'serious health condition' entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider . . . ." 29 C.F.R. § 825.113(a).

It is unlawful for a covered employer to interfere with an employee's attempt to exercise any FMLA entitlements. 29 U.S.C. § 2615(a)(1). It is also unlawful for an employer to retaliate against an employee who exercises FMLA rights. *See* 29 U.S.C. § 2615(a)(2) (prohibiting discrimination against employee who opposes any practice made unlawful by the FMLA). Pagel alleges that TIN both interfered with his exercise of an FMLA entitlement and retaliated against him for taking leave authorized by the FMLA. (Doc. 1-6).

# I.   Plaintiff's Interference Claim

To prevail on an FMLA interference claim, an employee must establish the following: (1) that he was eligible for the FMLA's protections; (2) that his employer was covered by the FMLA; (3) that he was entitled to leave under the FMLA; (4) that he provided sufficient notice of his intent to take FMLA leave; and (5) that his employer denied his right to those benefits. *Burnett v. LFW Inc.,* 472 F.3d 471, 477 (7th Cir. 2006).  No finding of ill intent is required. *Id.*

Here, there is no dispute that Pagel was an eligible employee or that TIN was covered by the FMLA.  At issue is whether Pagel was entitled to FMLA leave, whether Pagel provided sufficient notice to TIN that he intended to take FMLA leave, and whether TIN denied Pagel FMLA benefits to which he was entitled.


## i.      Was Pagel Entitled to FMLA Leave?

As discussed, *supra*, the FMLA covers eligible employees who have a serious health condition that renders them unable to perform the functions of their job. Since Pagel was an eligible employee, he would have been entitled to leave if he can demonstrate that he had a "serious health condition" that rendered him unable to perform the functions of his job.  In order to demonstrate that Pagel had a serious health condition, he has to show either (1) that he received inpatient care or (2) that he received "continuing treatment" by a health care provider.  29 C.F.R. § 825.113(a).  Inpatient care is defined as an overnight stay in a hospital.  29 C.F.R. § 825.114.  Continuing treatment is defined as, among other things, treatment by a

health care provider coupled with more than three consecutive, full calendar days of incapacity relating to the same condition. 29 C.F.R. § 825.115. The Court need not examine whether Pagel received continuing treatment, as it is undisputed that Pagel received inpatient medical care for his heart condition. (Doc. 51 at 12). As such, Pagel's heart condition was a serious health condition.

Notwithstanding this, TIN argues that Pagel was not entitled to FMLA leave because he was able to perform his job while he was receiving medical care, and TIN directs the Courts attention to the phone calls that Pagel made from the hospital on August 29. (Doc. 51 at 12-13). The Court disagrees. An employee is deemed unable to perform the functions of his position when he is unable to perform any one of the essential functions of his position. *Burnett*, 472 F.3d at 478; 29 C.F.R. § 825.123(a). According to the parties, one of the essential functions of an account manager position includes "calling on existing and prospective clients." (Doc. 54 at 4). While Pagel may have been able to call some of his existing clients via telephone, Pagel obviously was not in a position to visit existing clients, nor was he in a position to visit potential new clients while simultaneously being treated on an inpatient basis at the hospital. There is also evidence which indicates that Pagel may not have been able to call on existing and new clients during his post-discharge recovery periods as well. (Doc. 54-3; Doc. 52-3 at 81). If "calling on" new clients merely entailed picking up the telephone, then TIN would not have provided Pagel with a company car and Kremer would not have required that Pagel take him on a ride-along on September 19. Therefore, the Court concludes that Pagel had a

serious medical condition that rendered him unable to perform the functions of his position.  Consequently, Pagel was entitled to leave under the FMLA.

### ii.    Did Pagel Provide Sufficient Notice to TIN that he Intended to take FMLA Leave?

Sufficiency of notice may be broken down into two elements – the timing of the notice and the contents of the notice.  *See* 29 C.F.R. § 825.302(a)-(b) (timing) and 29 C.F.R. §825.302(c) (contents).

With respect to timing, an employee entitled to FMLA leave must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on planned medical treatment for a serious health condition of the employee.  29 C.F.R. § 825.302(a).  If 30 days notice is not practicable, such as because of a medical emergency, notice must be given as soon as practicable.  *Id*.  As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case.  29 C.F.R. § 825.302(b).  When an employee becomes aware of a need for FMLA leave less than 30 days in advance, it will generally be practicable for the employee to provide notice of the need for leave either the same day or the next business day.  *Id*.

With respect to contents, an employee is required to provide verbal or written notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave.  29 C.F.R. § 825.302(c).  "When providing notice of leave, an employee is not required to expressly assert rights under the FMLA or even mention the FMLA, but may only

state that leave is needed." *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 311 (7th Cir. 2006). An employer, is, however, "entitled to the sort of notice that will inform [it] that the FMLA may apply." *Id.* "The employee's notice obligation is satisfied so long as he provides information sufficient to show that he *likely* has an FMLA-qualifying condition." *Burnett*, 472 F.3d at 479 (emphasis in original).

Here, the record does not clearly establish the timing, quantity and nature of communications regarding Pagel's medical condition. With respect to his stress tests on August 4 and August 7, Pagel testifies that he told Kremer, "I'm having chest pains. I'm having chest pains and heart trouble, and I have to go to the Doctor to get it checked out." (Doc. 52-3 at 23). When discussing the notice he gave Kremer regarding the angioplasty on August 29, Pagel testifies that he thinks he sent Kremer an e-mail stating, "On such and such a date I have to go in for heart surgery, will be in touch or will let you know how it turns out." (Doc. 54-6 at 2). With respect to the timing of the notice regarding the angioplasty, Pagel does not recall when he gave it. (Doc. 52-3 at 27-28, 236). However, Pagel's wife testifies that she overheard her husband call and leave Kremer a voice mail regarding the surgery immediately after learning of his need for the surgery. (Doc. 54-18 at 4).

Kremer testifies that while he knew that Pagel was under the care of a physician for a heart condition, he had no idea that it was serious or that Pagel was going in for surgery. (Doc. 54-26 at 1). Nevertheless, Kremer did recall Pagel informing him that he would require time off to see a physician. (Doc. 54-30).

As the Seventh Circuit has observed, "Adequacy of notice is a fact-rich question . . . perhaps best resolved by the trier of fact, particularly, where, as is the

case here, the employer and employee dispute the quantity and nature of communications regarding the employee's illness." *Burnett*, 472 F.3d at 479 n. 4. As the deposition excerpts indicate, it is far from clear what Pagel said and when he said it. It would be up to the jury to decide whether Pagel gave adequate notice of his entitlement to FMLA leave. Consequently, there is a genuine issue of material fact regarding this issue which would ordinarily preclude the grant of summary judgment to Defendant.

However, assuming, *arguendo*, that Plaintiff did give adequate notice of his entitlement to FMLA leave, he must also present sufficient evidence in the record to show the existence of the other essential elements of his claim – namely, that Defendant interfered with Pagel's FMLA rights. But here again Plaintiff's claim can be defeated if Defendant makes a sufficient showing that it had a legitimate, non-discriminatory reason to fire Pagel. As discussed, *infra*, although a *prima facie* case of interference is made-out, the record shows, and a reasonable jury could not help but find, that Defendant had a legitimate, non-discriminatory reason to fire Plaintiff – a reason unrelated to the exercise of Pagel's FMLA rights.

### iii.     Did TIN Interfere with Pagel's FMLA Rights?

Pagel argues that TIN denied him his FMLA benefits because (1) TIN improperly considered missing daily and bi-weekly reports in the decision to terminate him, and (2) TIN did not adjust Pagel's sales goals or objectives to reflect the incapacity caused by his serious health condition. (Doc. 54 at 33). As evidence of the former point, Pagel notes that his termination letter took into account some

missed daily reports that he contends should not have been considered since he was entitled to FMLA leave when these reports became due. (Doc. 54 at 33; Doc. 52-3 at 80). As evidence of the latter point, Pagel directs the Courts attention to Kremer's testimony that he did not adjust Pagel's sales goals or objectives to take into account those days that Pagel was entitled to FMLA leave. (Doc. 54 at 33; Doc. 54-29).

Under 29 C.F.R. § 825.220(c), employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; and this proscription also applies to analysis of an interference claim. *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2003). If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled. *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006). When an employee can demonstrate that his employer has denied him a benefit under the FMLA to which he is entitled, that employee is deemed to have established a *prima facie* case of interference. *Brown v. Automotive Components Holdings, LLC*, 622 F.3d 685, 689-90 (7th Cir. 2010). However, the establishment of a *prima facie* case of interference does not automatically establish liability on behalf of the employer; such denial of benefits is deemed not to constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 636 (7th Cir. 2009).

The Court will now discuss whether Pagel has established a *prima facie* case of interference. Kremer essentially admits that some of the data cited in the Termination Letter to justify Pagel's termination was improperly included if Pagel was entitled to FMLA leave. (Doc. 52-4 at 20). As an example of this improperly considered data, it is undisputed that a number of the missed daily call reports cited in the Termination Letter were for days where Pagel alleges he was entitled to FMLA leave. (Doc. 54 at 23). Furthermore, some of the other justifications for firing Pagel (no new accounts, no new targets, and lost sales) were impacted by Pagel's extended absence from work due to FMLA leave. (Doc. 54 at 23). In light of this improper inclusion of data, and because Pagel's goals and scores were not adjusted to account for his FMLA leave, there is sufficient evidence for a reasonable jury to find that TIN interfered with Pagel's FMLA rights. Consequently, the Court concludes that Pagel may be able to establish a *prima facie* case of interference.

In an attempt to defeat Pagel's *prima facie* case, TIN argues that it had a legitimate, non-discriminatory reason for firing Pagel - poor performance, and claims that Pagel would have still been considered a poor performer and terminated even if his goals had been adjusted to account for his FMLA leave. (Doc. 55 at 6). As an example of Pagel's poor performance, TIN directs the Court's attention to Kremer's ride-along with Pagel on September 19. The ride-along can be summarized as follows: For their first visit, Pagel took Kremer to a factory that was closed. Next, Pagel took Kremer to meet with a secretary, rather than a buyer. On this visit, the secretary asked for a quote on what Pagel admitted was a "very

small" order.  (Doc. 52-3 at 51).  Finally, Pagel took Kremer to meet with a buyer that Kremer considered a bad fit.

Kremer considered the ride-along to be "completely and totally unacceptable." (Doc. 52-3 at 80).  Pagel admits that this ride-along was not his best salesmanship, and that the experience left Kremer with a bad impression of Pagel's sales abilities. (Doc. 52-3 at 54).  Nevertheless, Pagel contends that the sales calls were not that bad, and were only the result of short notice to set them up.  (Doc. 54 at 11).

With respect to Pagel's argument that the ride-along was not that bad; "this court does not sit as a super-personnel department that reexamines an entity's business decisions."  *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 324 (7th Cir. 2003).  Whether Pagel was, in reality, a better salesman than Kremer believed is immaterial.  What matters is that Kremer had legitimate, non-discriminatory grounds for concluding that Pagel was not meeting TIN's standards.  Viewing the evidence in the light most favorable to Pagel, there is sufficient evidence from which Kremer could have concluded that Pagel's performance on the ride-along was unacceptable.

With respect to Pagel's argument that the sales trip reflected short notice; there is no evidence in the record from which a jury could reasonably conclude that the short notice infringed on Pagel's FMLA rights.  While Pagel had an outpatient hospital visit for part of the day on September 18 (the day he allegedly received notice of the ride-along), there is no evidence to suggest, and Pagel does not allege, that he was entitled to FMLA leave on September 19 (the day of the ride-along).  There is also no evidence that Pagel objected to the requested ride-along or that

Pagel indicated to Kremer that he needed more time to set up the sales calls because he had taken FMLA leave earlier in September. Instead, Pagel voluntarily returned to work and participated in this ride-along. After doing so and failing to meet Kremer's legitimate expectations, Pagel was not entitled to a mulligan. For the foregoing reasons, the Court concludes that a reasonable jury could not help but find that Pagel's performance on the ride-along on September 19 constituted a legitimate, non-discriminatory reason for terminating Pagel. Consequently, because Pagel is unable to establish all five of the necessary elements of his interference claim, such claim fails as a matter of law. *See Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) ("To survive a defendant's motion for summary judgment, a plaintiff must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial.") (Citations omitted).


## II. Plaintiff's Retaliation Claim

Pagel also asserts that TIN retaliated against him for asserting rights under the FMLA. (Doc. 1-6). The difference between an interference/entitlement theory and a discrimination/retaliation theory is that the latter requires evidence of discriminatory or retaliatory intent. *Kaufman,* 426 F.3d at 884. Similar to other claims of discrimination, a charge of retaliation can be supported under direct or indirect methods of proof. *Burnett,* 472 F.3d at 481. Under the direct method, a plaintiff must present evidence that his employer took a materially adverse action against him on account of his protected activity. *Id.* (citation omitted). Under the

indirect method, a plaintiff must show that after engaging in a protected activity, he was treated less favorably than other similarly situated employees who did not engage in that same activity, even though he was performing his job in a satisfactory manner. *Id.* at 481–82 (citing *Hull v. Stoughton Trailers, LLC,* 445 F.3d 949, 951 (7th Cir. 2006)).

Pagel alleges retaliation under both the direct and indirect methods of proof, and the Court will address each in turn.

### i. Direct Method

To establish a prima facie case of retaliation under the direct method, a plaintiff must present evidence that his employer took materially adverse action against him on account of his protected activity. *Burnett,* 472 F.3d at 481. If the plaintiff's evidence is thereafter contradicted: the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation. *Id.*

Under the direct method, Pagel offers three reasons why a causal connection exists – (1) timing, (2) the testimony of a former co-worker stating that Kremer did not appreciate it when his employees took time off from work and (3) the improper consideration of missed reports due to FMLA leave and the failure to adjust his sales goals. (Doc. 54 at 38-40). Viewing the evidence in the light most favorable to the plaintiff, the Court will assume, without deciding, that these reasons, taken as a

whole, are sufficient to "clear the low prima facie hurdle." *Simpson v. Office of Chief Judge of Circuit Court of Will County*, 559 F.3d 706, 720 (7th Cir. 2009).

However, this is not the end of the analysis. TIN argues that it had a legitimate, non-discriminatory reason for terminating Pagel – namely, poor performance. (Doc. 51 at 23). As discussed, *supra*, the Court has concluded that this constituted a legitimate, non-discriminatory reason for terminating Pagel.

Nevertheless, Pagel argues that this reason is a pretext on the grounds that the ride-along was a set-up for failure and, in his opinion, his performance on the ride-along wasn't bad, even if it wasn't his best salesmanship. Turning first to Pagel's contention that the ride-along was a set-up for failure; the Court finds that this allegation is unsupported by the record. Pagel admits that he was not singled out for the ride-along on September 19, and Pagel further admits that Kremer goes on ride-alongs with all of his salespeople. (Doc. 54-14 at 1). Simply put, there is nothing in the record to indicate that Kremer treated Pagel any differently with respect to this ride-along than he treated other account managers. Consequently, there is nothing to indicate that Kremer was trying to set up Pagel for failure when he requested the ride-along of September 19.

Finally, Pagel's contention that his performance wasn't that bad also is not sufficient to show pretext. Pagel concedes that Kremer could have honestly believed that Pagel's performance on the ride-along was poor. (Doc. 54-14 at 2). This is all the law requires. *See Balderston*, 328 F.3d at 324 ("[A] reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination."); *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003)

(plaintiff's belief that his performance evaluation was objectively unwarranted is not enough to carry the day). Because Pagel has failed to demonstrate that TIN's legitimate reason of terminating Pagel for poor performance is a pretext, Pagel's claim of retaliation under the direct method of proof must fail.

### ii. Indirect Method

To proceed under the indirect method, the plaintiff creates a prima facie case if he can show that after taking FMLA leave he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though he was performing his job in a satisfactory manner. *Burnett* at 481-482. But again, the employer is entitled to summary judgment if it can proffer a legitimate, non-discriminatory reason for the adverse treatment that the plaintiff is unable to demonstrate is a pretext. *Simpson*, 559 F.3d at 718.

Here, Pagel is unable to demonstrate that he was performing the job in a satisfactory manner because he admits that his sales were down and Kremer honestly could have found the ride-along to be unacceptable. (Doc. 54-7; 54-14 at 2). Furthermore, Pagel admits that Kremer may have honestly believed that he was delinquent in his prospecting for new clients. (Doc. 54-10; 54-11; 54-12).

With respect to producing a similarly-situated employee; Pagel has offered one individual by the name of Timothy Bass. However, it is not clear how these two were similarly situated, other than that they were both salesman for TIN. Timothy Bass testified that he underwent a vasectomy while employed at TIN. (Doc 54-24). The record does not indicate that the vasectomy was required to treat a serious

medical condition, nor does it reveal whether Bass was entitled to FMLA leave for this surgery. Furthermore, Bass voluntarily left TIN shortly thereafter, so it is impossible to know what his career prospects at TIN would have been if he had remained there (Doc. 54-22). Consequently, comparing Pagel to Bass does nothing to aid the Court in its indirect discrimination analysis.

Because Pagel is unable to demonstrate that he was performing his job in a satisfactory manner at the time the alleged retaliation occurred, and because Pagel is unable to identify a similarly situated employee, the Court concludes that Pagel has failed to establish a prima facie case of retaliation under the indirect method of proof. However, assuming, *arguendo*, that Pagel had established a *prima facie* case of retaliation under the indirect method of proof, this claim would still fail because, as discussed, *supra*, Pagel cannot show that TIN's legitimate reason of firing him for poor performance was a pretext.

### III.      Damages

Because the Court concludes that Pagel's FMLA claims fail as a matter of law, the Court need not address that part of the Defendant's Motion for Summary Judgment that pertains to damages.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 50) is GRANTED. The Clerk is DIRECTED to ENTER JUDGMENT in favor of Defendant and against Plaintiff. IT IS SO ORDERED.

CASE TERMINATED.

Entered this <u>2nd</u> day of June, 2011.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
